**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000933
29-AUG-2017
08:24 AM**

NO. CAAP-14-0000933

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
KEITH T. MATSUMOTO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-0918)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Keith T. Matsumoto (Matsumoto) appeals from the Circuit Court of the First Circuit's (Circuit Court)[1] June 27, 2014 Judgment of Conviction and Probation Sentence, adjudicating Matsumoto guilty of the offense of Sexual Assault in the Third Degree, a violation of Hawaii Revised Statutes (HRS) § 707-732(1)(c)(2014).[2]

---

[1]    The Honorable Randal K.O. Lee presided.

[2]    **§ 707-732 Sexual assault in the third degree.**
(1) A person commits the offense of sexual assault in the third degree if:

   . . . .

   (c)    The person knowingly engages in sexual contact
          with a  person who is at least fourteen years
          old but less than sixteen years old or causes
          the minor to have sexual contact with the
          person; provided that:

          (i)    The person is not less than five years
                 older  than the minor; and

          (ii)   The person is not legally married to the
                 minor[.]

On appeal, Matsumoto maintains that the Circuit Court erred by (1) failing to suppress Matsumoto's post-polygraph statements and subsequently refusing to admit evidence that a detective's "deliberate falsehood" induced Matsumoto's post-polygraph statements; (2) providing prejudicial jury instructions on "sexual and intimate parts" and the importance of "context"; (3) abusing its discretion by providing the jury with redacted transcripts; and (4) denying Matsumoto's motion for judgment of acquittal.

After careful consideration of the points raised and the arguments made by the parties, the record, and the applicable authority, we resolve Matsumoto's issues as follows and affirm.

## A. Polygraph Evidence.

### 1. *Motion to Suppress Post-polygraph Statements.*

We review the voluntariness of a confession *de novo*. State v. Kelekolio, 74 Haw. 479, 502, 849 P.2d 58, 62 (1993). The Hawai'i Supreme Court has held that deliberate, intrinsic falsehoods, i.e., regarding the facts of the offense, will be considered along with other circumstances surrounding the defendant's statement in evaluating whether that statement was voluntarily given. On the other hand, deliberate, extrinsic falsehoods, i.e., not regarding the facts of the crime or which contain incentives to speak or misrepresent relevant law, are *per se* coercive and do not require additional inquiry into the voluntariness of the defendant's statement. Kelekolio, 74 Haw. at 511, 849 P.2d at 73.

Matsumoto alleges that the Circuit Court erred in denying his motion to suppress his post-polygraph statements because "they were illegally obtained by polygraph operator Det. Allan Kuaana's (Det. Kuaana) use of extrinsic falsehoods" and thus were the product of coercion. Matsumoto primarily relies upon Kelekolio and maintains that two statements made by Det. Kuaana were extrinsic falsehoods, qualifying for *per se* coercive status. The first, the statement that Matsumoto "did not pass" the polygraph examination was, according to Matsumoto, a deliberate falsehood, misled him into thinking he failed the

2

test when the results were, in fact, inconclusive, and "constituted an extrinsic falsehood as it was not intrinsic to the facts of the offense." The other was Det. Kuaana's remark that it was important to tell the truth[3] which, in Matsumoto's view, implied that if he changed the version of events he had related up to that point, he would gain a benefit, when in fact, the State could still charge him regardless of what he said. In combination, Matsumoto argues, these statements implied that Matsumoto would benefit from a change in what he told the police and "constituted a 'promise of more favorable treatment in the event of a confession' that constitutes an "extrinsic falsehood'" under Kelekolio.

First of all, Det. Kuaana's report to Matsumoto that the latter "did not pass" the polygraph test was not, strictly speaking, a misrepresentation, as Matsumoto's score was "inconclusive," meaning that he did not score well enough to "pass" nor did he score well enough to fail.

Secondly, the remarks Matsumoto challenges are regarding matters intrinsic to the charged offense, as they relate to the strength of the evidence against Matsumoto in this case. See Sheriff, Washoe County v. Bessey, 914 P.2d 618, 620-22 (Nev. 1996) (applying Kelekolio intrinsic/extrinsic analysis to false representation that test results of the scene were positive for defendant's semen).

Finally, other jurisdictions evaluating actual misrepresentations of polygraph results have not held them coercive per se, and have ruled the resulting statements voluntary. See Finke v. State, 468 A.2d 353, 374 (Md. Ct. Spec. App. 1983) ("'It is clear, however, that the use of [the polygraph] procedure . . . would not as a matter of law require the exclusion of a confession so obtained. . . .'" (citations and brackets omitted)); State v. Graham, 733 S.E.2d 100, 105 (N.C.

---

[3] In his report, Det. Kuaana described his remark as follows:

I explained the facts of the case as I knew them to be to the subject. I then explained the importance to tell the truth so that whenever a "reasonable person" were to review the facts of the case, that person would be able understand the subject['s] account of the incident.

Ct. App. 2012) ("deception is not dispositive where a confession is otherwise voluntary. . . . 'False statements by officers concerning evidence, as contrasted with threats or promises, have been tolerated in confession cases generally, because such statements do not affect the reliability of the confession.'" (citation omitted)); People v. Serrano, 14 A.D.3d 874 (N.Y. App. Div. 2005) (where police questioned defendant for 12 hours and informed him that he failed a polygraph examination, "'[s]uch police stratagems do not compel a conclusion of involuntariness unless there is a showing that the deception was "so fundamentally unfair as to deny due process"' or that it was 'accompanied by a promise or threat that could induce a false confession.'").

Thus, we analyze the totality of the circumstances surrounding Matsumoto's post-polygraph statements for voluntariness. As the Circuit Court found, and Matsumoto does not dispute, Matsumoto appeared to be comfortable during his post-polygraph interview with Det. Kim McCumsey (Det. McCumsey). Matsumoto did not ask for any medication, and his "attitude about his achiness and taking medication seems casual and his demeanor does not indicate that he was unable to proceed with the interview due to his physical condition." In addition, Matsumoto is a well-educated individual, holding an undergraduate degree in civil and urban engineering and a graduate degree in business administration, holds positions of responsibility, and is the state coordinator for the sport of wrestling for the Hawaii High School Athletic Association.

Matsumoto waived his Miranda rights before and agreed on several occasions during his first interview with Det. McCumsey to take the polygraph examination and waived his Miranda rights before the polygraph examination was conducted and again before his post-polygraph interview with Det. McCumsey. During his post-polygraph interview with Det. McCumsey, Matsumoto seems alert and responsive to Det. McCumsey's questions, does not appear to be sleep deprived, nor does he request medication or medical attention or complain of any pain or physical condition.

Finally in this regard, it is far from clear that hearing he did not pass the polygraph exam caused Matsumoto to make his post-polygraph statements. Matsumoto did not appear to be shocked or upset by the revelation that he did not pass the polygraph test.[4] Det. Kuaana testified that Matsumoto's admission that he did grab Minor's buttock came after Det. Kuaana, confronted and told Matsumoto, "I know you did this. There's no doubt." Furthermore, Matsumoto later told Det. McCumsey that while he did not remember the encounter during the first interview with her, his memory was jogged when Det. Kuaana showed him a diagram of the gym, stating that it "made the world of difference." Matsumoto also testified at trial that when the detective mentioned Minor bending over it "spurred [his] memory."

Based on the totality of the circumstances, we agree with the Circuit Court that Matsumoto's post-polygraph statements were voluntary.

2.  *Exclusion of evidence that Matsumoto's post-polygraph statements were induced by Det. Kuaana's assessment that Matsumoto did not pass the polygraph examination.*

Matsumoto concedes that evidence of polygraph results and the refusal or willingness to submit to a polygraph examination are inadmissible in this jurisdiction. State v. Antone, 62 Haw. 346, 357, 615 P.2d 101, 109 (1980) (citing State v. Chang, 46 Haw. 22, 31, 374 P.2d 5, 11 (1962); State v. Lewis, No. 30528, 2013 WL 6762403 at *12 (App. Dec. 23, 2013) (mem.). In addition, the United States Supreme Court has sustained a *per se* rule of exclusion. U.S. v. Scheffer, 523 U.S. 303 (1998) (*per se* rule against the admission of polygraph evidence in a military court did not violate the defendant's Fifth and Sixth Amendment rights to present a defense). However, Matsumoto argues that such evidence should be admissible "to provide the context and explanation" of his post-polygraph statements and consequently

---

[4]  Det. Kuaana described Matsumoto's reaction as follows:

He, basically, sat in his chair. I know I notated [sic] in my report what he had done. But he was really – no any sort of denial. He just kind of sat there, from what I recall was kind of just nodding his head up and down. He told me that if he did touch the girl that he doesn't remember doing it.

that the Circuit Court "abused its discretion in precluding the defense from adducing evidence that Matsumoto's post-polygraph statements were induced by Det. Kuaana's deliberate falsehood that Matsumoto had 'not passed' the polygraph exam."[5]

Although not clear from Matsumoto's argument, we infer that Matsumoto sought admission not only of Det. Kuaana's representation that Matsumoto "did not pass" the examination but also Det. Kuaana's opinion that Matsumoto's polygraph score was, in fact, "inconclusive" because the former would not be relevant to his coercion through misrepresentation argument without knowing the latter. However, Hawai'i case law does not provide for such an exception to the prohibition against polygraph results.

Moreover, as previously discussed, the record does not support Matsumoto's argument that the revelation he "did not pass" "rocked his world" and caused him to make incriminating admissions. Det. Kuaana testified that there were no obvious signs of such a response when he gave Matsumoto the news. Matsumoto testified at the hearing on the motion to suppress that he was "bothered" and "didn't understand why" he did not pass, and that he had some doubts about the results at the time,[6] but did not testify that he voiced these concerns to Det. Kuaana. Matsumoto testified at trial to other reasons for his post-

---

[5] In this context, Matsumoto also argues that Det. Kuaana "gave Matsumoto the impression that it would benefit him to change his previous statement and instead 'tell the truth.'" However, Matsumoto did not assert this basis in support of his motion in limine before the trial court and does not now elaborate on this assertion or otherwise explain how Det. Kuaana gave this impression to him. Therefore, we decline to address this argument.

[6] Matsumoto testified,

I was told, Well, I need to do more processing; But you failed; But you didn't pass, again, which, again, confused me even more. Because I'm, like, Okay. Well, how can you conclude that I didn't pass if you're telling me you still need to process the results further.

Q.   So at that point you kept expecting Detective Kuaana to explain to you why he said you didn't pass?

A.   [No audible response.]

Q.   And did that ever come?

A   No.

polygraph statements, such as being shown a diagram of the gym where the offense occurred, and hearing the detective describe the incident as when Minor was "bending over."

We conclude that the Circuit Court did not abuse its discretion by excluding Matsumoto's polygraph examination results at trial.

**B.    Jury Instruction regarding "sexual and intimate parts" and "context."**

Matsumoto challenges the Circuit Court's jury instructions on the terms "sexual intimate parts" and "context." Matsumoto contends they were "prejudicially erroneous and misleading" because "the jury was required to consider whether the buttocks constituted a 'sexual or intimate' part in the context in which it occurred[,]" and that the "court's instructions were misleading because they specifically instructed the jury that the 'buttocks' were 'intimate parts.'" Consequently, Matsumoto claims "the jury could have believed that the buttocks were an 'intimate part' as a matter of law regardless of context."

The challenged jury instruction read:

> "Sexual contact" means any touching, other than acts of "sexual penetration," of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

> "Sexual parts" means the sex organs.

> "Intimate parts" means the buttocks and those parts of the body typically associated with sexual relations.

> In considering whether the part of the body touched is a "sexual or other intimate part," you must consider the context in which the contact occurred.

"When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." State v. Walton, 133 Hawai'i 66, 83, 324 P.3d 876, 893 (2014) (quoting Kobashigawa v. Silva, 129 Hawai'i 313, 320, 300 P.3d 579, 586 (2013)).  In State v. Silver, 125 Hawai'i 1, 249 P.3d 1141

(2011), the Supreme Court of Hawai'i concluded that "the legislature intended the buttocks to be an 'intimate part' for purposes of 'sexual contact' as that phrase is defined in section 707-700[,]" but also noted that a "body part which might be intimate in one context, might not be in another[.]" Silver, 125 Hawai'i at 7, 249 P.3d at 1147 (brackets omitted). The instruction conveys this concept; it defines "intimate parts" as including the buttocks but also requires the jury to "consider the context in which the contact occurred." Matsumoto's argument hinges on the supposition that the jury followed the first part but ignored the latter and fails to provide any evidence in support of this assumption. However, the jury is presumed to follow the court's instructions. State v. Kassebeer, 118 Hawai'i 493, 512, 193 P.3d 409, 428 (2008). Matsumoto's argument is without merit.

## C. Presentation of Matsumoto's Redacted Statements to the Jury.

Matsumoto argues the Circuit Court erred in providing to the jury redacted rather than "clean" copies of the transcripts of his statements. Citing primarily to State v. Tucker, 10 Haw. App. 43, 861 P.2d 24 (1993), he maintains that "there is the distinct possibility that the jury would speculate as to the redactions, especially when the redactions are obvious." For the reasons stated below, reject this argument.

Tucker is inapposite. That case involved a trial for the murder of co-defendants' six-month old son for failing to provide medical care. The jury was presented with statements given by both defendants implicating the other, but neither testified at trial, implicating their rights to confrontation under the Sixth Amendment of the United States Constitution and Article I, Section 14 of the Hawai'i State Constitution. Tucker, 10 Haw. App. at 59, 861 P.2d at 32. Both defendants argued that the manner in which the transcripts had been redacted, either by omitting whole pages or merely replacing names with neutral pronouns was deficient, as their "existence was still apparent and obvious from the context." Tucker, 10 Haw. App. at 66-69,

8

861 P.2d at 35-36. This court adopted a "case-by-case approach" and agreed with both defendants.

Here, Matsumoto's right to confrontation is not at issue as Minor and the percipient witness who contacted the police testified and were cross-examined. Rather, Matsumoto speculates that because there were obvious redactions in the transcript of his statements given to the jury, those redactions invited the jury to speculate about the matters redacted. The one example Matsumoto cites does not support his speculation and, in any event, the trial court instructed the jury not to speculate on the contents of any redaction of the transcripts. Without more, we presume the jury adhered to the Circuit Court's instructions. Kassebeer, 118 Hawai'i at 512, 193 P.3d at 428.

D. Sufficiency of the evidence.

Again relying on Silver, Matsumoto alleges the Circuit Court erred in denying his motion for judgment of acquittal, because there was "no substantial evidence to support Matsumoto's conviction where his congratulatory pat on [Minor's] butt did not constitute the touching of a sexual or intimate part in the context in which it occurred[,]" i.e., a school-age wrestling tournament.

While the Silver court acknowledged that "a body part which might be intimate in one context, might not be in another[,]" Silver, 125 Hawai'i at 7, 249 P.3d at 1147, it did not categorically foreclose inclusion of buttock-touching merely because it occurred in a sports or parental care context. Indeed, such an interpretation would run counter to the broad definition of sexual contact that the court had just endorsed. Silver, 125 Hawai'i at 6-7, 249 P.3d at 1146-47.

In the instant case, Minor testified that on June 9, 2012, at a sporting event in which she participated, Matsumoto touched her in a way that made her feel uncomfortable. Minor further testified that Matsumoto touched her two times. The first was when he "touched (Minor's buttocks) but like on accident." She testified she felt Matsumoto's hand "slide by my butt." Minor also stated she felt this first physical contact

9

was an accident, but clarified that the first physical contact, was not a "good job" pat on the buttocks common in sports, because she had yet to participate in the wrestling tournament.

In the second incident, Matsumoto came up behind her while she was talking to a referee and massaged her shoulders; when she tried to leave, he "slap/grabbed" her buttocks. To illustrate the event, Minor, with the deputy prosecutor standing in the place of Minor, demonstrated Matsumoto's actions for the jury:

> Q    Okay.  So you were sitting down, and you said you stood back up?
>
> A    Yes.
>
> Q    And then what happened?
>
> A    Then he came up like this, and he walked --
>
> THE COURT: Go ahead.
>
> [Deputy Prosecutor] MS. VIDINHA: Okay. Your Honor, I want the record to reflect that [Minor] wrapped her arms around my waist area, and she kind of connected them in front a little bit, and then they slid them up to right below my breast, and she slid them down to by my hips.
>
> BY MS. VIDINHA:
>
> Q    Is that --
>
> A    Yes.
>
> Q    Okay.  And then what --
>
> THE COURT:  And that the witness was in the -- parallel to your back with the -- both arms wrapped around the -- going from the back to the front of Ms. Vidinha.
>
> MS. VIDINHA:  Thank you, your Honor.
>
> BY MS. VIDINHA:
>
> Q    Okay.  So first he slid up, and then he slid down to by your hip area. And then did you do something at this point?
>
> A    Yeah.  I tried to get down and walk away.
>
> Q    So you kinda tried to get down, you kinda bent down and walked away?
>
> A    Yeah.
>
> . . . .
>
> BY MS. VIDINHA:
>
> Q    Okay.  And as you walked away, did something else happen?  Did he touch you as you --

A    Yes.

Q    Okay.  What did -- how did he touch you when you walked away? And you can just kinda show --

A    He just like slap/grabbed. Like lightly grabbed but slapped.

MS. VIDINHA:  Okay.  Let the record reflect that the witness is using both hands, your Honor, and coming up in a sweeping up motion ending at her waist area or her hip area, then she's doing a little moving in of her fingers.

BY MS. VIDINHA:

Q    Am I describing it correctly, [Minor]?

A    Yes.

THE COURT:  In a squeezing motion?

THE WITNESS:  Yes.

MS. VIDINHA:  In a squeezing motion, your Honor.

THE COURT:  Very well. The record shall so note.

Following this event, Minor told her father what had occurred.

Radford High School wrestling coach and official William Ullom (Ullom) also testified he witnessed Minor "being inappropriately touched."  Ullom also demonstrated the touching he witnessed:

Q    [Deputy Prosecutor]:  So I'm just going to try and articulate your hand motions that you did.  So your hands came in front of you?

A    Yeah.  Came from the back to the front, back down the sides of the back.

Q    So you saw him first touch her butt -

A    Uh-huh.

Q    -- and then bring his arms around to the front of her?

A    Uh-huh.

Q    To her torso area?

A    More toward the groin.

Q    Down toward the groin you say his hands go?

A    Uh-huh.

Q    And then back toward the butt area again?

A    Uh-huh.

Q    And we're saying the butt area, but did you actually see his hand touch her butt?

A    Uh-huh.

This testimony supports the notion that, despite the event occurring at a sporting event, the touching was not in a sporting context, that is, as encouragement or appreciation for performance in the sporting event. Minor testified that she was not wrestling at the time but coaching another player. More importantly, both Minor and Ullom testified that the touching was more than a swat on the buttocks but consisted of squeezing and moving his hands to the front of Minor's body. Based on this testimony, when viewed in the strongest light for the prosecution, State v. Matavale, 115 Hawai'i 149, 157-58, 166 P.3d 322, 331-32 (2007), there was substantial evidence such that a reasonable juror could have found Matsumoto guilty of Sexual Assault in the Third Degree.

Based on the foregoing, the June 27, 2014 Judgment of Conviction and Probation Sentence entered by the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, August 29, 2017.

On the briefs:

David M. Hayakawa,
for Defendant-Appellant.

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

12